525 So.2d 1017 (1988)
Victoria M. BRANDT, Appellant,
v.
Donald W. BRANDT, Appellee.
No. 4-86-1881.
District Court of Appeal of Florida, Fourth District.
June 1, 1988.
*1018 John L. Avery, Jr., Jupiter, for appellant.
Paul M. Herman of Beers & Herman, P.A., Palm Beach Gardens, for appellee.

EN BANC OPINION ON REHEARING
HERSEY, Chief Judge.
We grant appellant's motion for rehearing of our decision in Brandt v. Brandt, 12 F.L.W. 1977 (Fla. 4th DCA Aug. 12, 1987). Because the issue is one of exceptional importance, we have considered the matter en banc. We withdraw our former opinion and substitute the following in its place.
In the course of obtaining a dissolution of their marriage, the parties entered into a property settlement agreement. Regarding the marital home the agreement contained the following provision:
The Wife shall have permanent care, custody and control of the marital home... . When the property is sold ... the net proceeds shall be divided between the husband and the Wife.
During the time the Wife shall have custody of the marital home, she shall be responsible for all mortgage payments, taxes and upkeep.
The final judgment approved and incorporated the agreement by reference and provided:
"The Court retains jurisdiction of this cause and the parties hereto to enter such other and further orders as may be appropriate."
During the next two years the wife (appellant) paid $24,038.61 for expenses associated with the former marital home. After its sale, she petitioned for a credit of one-half of these expenses to be allowed in apportioning the sale proceeds. The basis for her claim was that the husband, as an equal co-tenant, was liable for one-half of the common expenses of the property. Since she paid all of those expenses she was entitled, under her theory, to be reimbursed for one-half. Upon denial of her petition by the trial court, she perfected this appeal.
If the wife's application for reimbursement is viewed as an attempt by her to obtain modification of property rights, then she has little chance of success. The rule applicable in such cases is firmly entrenched in venerable property law. We reviewed the rule and its essential corollaries not so long ago in Horne v. Horne, 417 So.2d 324, 325 (Fla. 4th DCA 1982), rev. denied, 429 So.2d 6 (Fla. 1983), thusly:
In Covin v. Covin, 403 So.2d 490 (Fla. 3d DCA 1981), the trial court entered an order directing the sale of a marital home without a reservation of jurisdiction in the final judgment of dissolution for such action. The holding in Covin, supra, is dispositive of the case sub judice:
[T]here is no statutory authority for the court to retain jurisdiction to enter post-judgment orders determining the property rights of the parties. Sistrunk v. Sistrunk, 235 So.2d 53 (Fla. 4th DCA 1970). Generally, a court has no jurisdiction to modify property rights after an adjudication of those rights has been made in the judgment of dissolution. Mason v. Mason, 371 So.2d 226 (Fla. 2d DCA 1979); Pruitt *1019 v. Pruitt, 370 So.2d 813 (Fla. 3d DCA 1979).
Property rights not adjudicated on dissolution can be determined at a later time if jurisdiction to do so has been specifically retained, Galbut v. Garfinkl, 340 So.2d 470 (Fla. 1976). The court also retains jurisdiction to enforce any executory provisions contained in a final judgment of dissolution. Hoskin v. Hoskin, 349 So.2d 755 (Fla. 3d DCA 1977); Sapp v. Sapp, 275 So.2d 43 (Fla. 2d DCA 1973); cf. Mason v. Mason, 371 So.2d 226 (Fla. 2d DCA 1979).
Covin, supra, at 492.
Judge (now Justice) Grimes summarized the consequences of application of the rule carefully and succinctly in Mason v. Mason, 371 So.2d 226, 227 (Fla. 2d DCA 1979):
Ordinarily a court has no jurisdiction to modify property rights after an adjudication of those rights has been made in the judgment of dissolution. Finston v. Finston, 160 Fla. 935, 37 So.2d 423 (1948); Simon v. Simon, 293 So.2d 780 (Fla.3d DCA 1974). Property rights not adjudicated on dissolution can be determined later when jurisdiction to do so has been reserved. Galbut v. Garfinkl, 340 So.2d 470 (Fla. 1976); Hyman v. Hyman, 310 So.2d 378 (Fla. 2d DCA 1975), cert. discharged 329 So.2d 299 (1976); Seale v. Seale, 350 So.2d 96 (Fla. 1st DCA 1977). However, the reservation of jurisdiction contemplated by the foregoing cases is a specific reservation for the purpose of making a later adjudication of property rights.
It is important to note that even a specific reservation of jurisdiction only empowers the court to deal with property rights and interests not previously settled by a final judgment. Further, a general reservation of jurisdiction is insufficient to permit the court even to entertain questions concerning property rights not adjudicated in the final judgment. Thus, where there is no reservation of jurisdiction the court obviously has no authority to entertain a petition to modify the provisions of a final judgment adjudicating property rights. Mandy v. Williams, 492 So.2d 759 (Fla. 4th DCA 1986). The rule applies with equal force to a petition which is labelled as one for enforcement but which is, in actuality, an attempt to have the court determine an interest in a tenancy in common. Poling v. Tresidder, 373 So.2d 405 (Fla. 4th DCA 1979), and cases there cited.
The question is whether application of these principles precludes appellant from obtaining reimbursement for one-half of the expenses incurred in maintaining the former marital home where both the property settlement agreement and the final judgment fail to expressly provide for such reimbursement.
In the absence of a property settlement agreement it has uniformly been held that it was error not to require reimbursement where the party in possession has paid 100% of the common expenses. That result flows from the following analysis. Upon dissolution of marriage the tenants of an estate by the entirety become tenants in common. § 689.15, Fla. Stat. (1985). As co-tenants, each is ultimately liable for his or her proportionate share of the obligations of the property, including taxes, mortgage payments, insurance and maintenance and repair.
As co-tenants each is ultimately liable for his or her proportionate share of the obligations of the property, such as taxes and mortgages. Generally, if one co-tenant pays an obligation for which all are liable, he is entitled to have the other co-tenant pay his proportionate share. 8 Fla.Jur., Co-tenancy, § 12. But where the final judgment of dissolution of marriage awards one co-tenant the exclusive possession of the marital domicile and directs that co-tenant to pay all or some of the obligations of the property such as taxes, liens and repairs, the right of the co-tenant in possession to reimbursement from the other co-tenant is postponed until such time as the property is partitioned or otherwise sold. However, upon partition or other sale the tenant paying those obligations of the property is entitled to credit from the proceeds of the sale for the other co-tenant's proportionate *1020 share of those expenses. Lyons v. Lyons, Fla.App. 1968, 208 So.2d 137. In a recent dissolution of marriage case, Guthrie v. Guthrie, Fla.App. 1975, 315 So.2d 498, this court held that the trial court erred in not giving the wife credit at the time of sale of the jointly owned marital domicile for payments she made for obligations of the property during the time of her possession.
Whiteley v. Whiteley, 329 So.2d 352, 353 (Fla. 4th DCA 1976). See also Wertheimer v. Wertheimer, 487 So.2d 90 (Fla. 3d DCA 1986); Tate v. Tate, 432 So.2d 601 (Fla. 4th DCA 1983); Price v. Price, 389 So.2d 666 (Fla. 3d DCA 1980), rev. denied, 397 So.2d 778 (Fla. 1981); Guthrie v. Guthrie, 315 So.2d 498 (Fla. 4th DCA 1975); Hendricks v. Hendricks, 312 So.2d 792 (Fla. 3d DCA 1975).
This leads us to the ultimate issue to be resolved in this case. Does it or should it make any difference that the obligation of the party in possession to pay or to "be responsible for" all of the common expenses until subsequent sale of the property, is imposed by agreement of the parties rather than by the final judgment?
It is clear that where the party out of possession has given a quid pro quo to be relieved of the obligation to make such payments both initially and ultimately, an agreement to that effect would offend neither the law nor public policy. In the absence of such a quid pro quo, the mere imposition of the obligation to initially make such payments should no more determine the ultimate liability for them because that obligation is imposed by contract than if it were imposed by a final judgment. There is no basis for an inference nor is there a presumption which answers the question as to whether or not the parties are ultimately to share these liabilities equally.
The agreement between the parties in the instant case simply places the responsibility for initially paying common expenses on the party in possession. It is silent as to ultimate liability. Under such circumstances, another principle of the law of contracts (which bears some relationship to the common expression to the effect that everyone is presumed to know the law) becomes relevant.
The laws which exist at the time and place of the making of a contract enter into and become a part of the contract made, as if they were expressly referred to and incorporated in its terms, including those laws which affect its construction, validity, enforcement or discharge. Humphreys v. State, 108 Fla. 92, 145 So. 858 (1933); see cases cited at 11 Fla.Jur. 2d Contracts § 129 (1979). Furthermore, contracts are made in legal contemplation of the existing applicable law. Carter v. Government Employees Insurance Co., 377 So.2d 242 (Fla. 1st DCA 1979), cert. denied, 389 So.2d 1108 ([Fla.] 1980).
Southern Crane Rentals, Inc. v. City of Gainesville, 429 So.2d 771, 773 (Fla. 1st DCA 1983).
As we have previously seen, in the absence of special circumstances the law imposes a duty on the nonpaying tenant to reimburse the paying tenant for common expenses at the time of and from the proceeds of a subsequent sale. Therefore, where there is an agreement but it is silent as to the ultimate liability for such expenses, and no evidence is presented that the non-paying tenant gave consideration to be relieved of his legal obligation to pay one-half of such expenses, we hold that a right of reimbursement in the paying tenant is established by operation of law.
Thus, where the final judgment incorporates by reference an agreement which fits within the framework of the principles we have described, that final judgment includes by incorporation and by necessary implication the duty to pay and the right to require payment of the respective parties. No retention of jurisdiction is necessary as a prerequisite to seeking reimbursement because it is simply a matter of enforcement and a court always has jurisdiction to enforce its orders and judgments. See Broadband Engineering, Inc. v. Quality RF Services, Inc., 450 So.2d 600 (Fla. 4th DCA 1984). That being so, there is no impediment to affording relief to appellant.
*1021 We reverse and remand for entry of an order consistent with this opinion.
REVERSED AND REMANDED.
DOWNEY, GLICKSTEIN and WALDEN, JJ., concur.
LETTS, J., concurs specially with opinion.
STONE, J., dissents with opinion.
ANSTEAD, DELL and GUNTHER, JJ., concur with J. STONE's dissent.
LETTS, Judge, concurring specially.
I cannot disagree with Judge Hersey's exposition of the current law, yet I also find myself somewhat in agreement with Judge Stone's dissent.
My ambivalence is partly predicated upon a gut reaction that the husband, who represented himself, never dreamed that under the agreement he would be required to make these reimbursements and, indeed, that is his argument on appeal. The property settlement agreement, entered into as long ago as 1978, provided for alimony, child support, payment of past due joint bills, division of personal property and automobiles, custody and in addition the following in paragraph five thereof:
5. DIVISION OF PROPERTY BETWEEN THE PARTIES. The Wife shall have permanent care, custody and control of the marital home located at 2639 West Edgewater Drive, Lake Park, Florida. Said custody of the marital home shall continue with the Wife until the youngest child reaches the age of 18 years, or the Wife remarries. In the event that the Wife remarries, the property shall be sold with the proceeds divided as stated below. However, the Wife may sell the property at an earlier time, should she desire to, or should she deem it in the best interest of herself and the children. When the property is sold, at the time the youngest child reaches the age of 18 years, or the Wife remarries, or at an earlier time, at the option of the Wife, the net proceeds shall be divided between the Husband and the Wife.
During the time the Wife shall have custody of the marital home, she shall be responsible for all mortgage payments, taxes and upkeep.
The trial judge in her order, which we now reverse, opined that the terms of the agreement were clear and unambiguous. By her reading of the contract, the wife was "responsible" for the mortgage payments, taxes and upkeep and so be it. The trial judge noted that there were "no provisions for a credit to the former wife ... during the time of her occupancy." I suggest the trial judge should be correct, but that the case law says she is not. As an example of why she should be correct, it goes without saying the wife has been deducting the interest on the mortgage and the taxes since 1978, up until the time the house was sold. Yet the husband apparently gets no benefit from that. At a minimum, I would think the wife should only get the benefit from the mortgage payments as they relate to reduction of principal under the agreement now before us.
At all events, we see innumerable examples of property settlement agreements which make no mention of credits. Draftsmen of these instruments, and indeed trial judges in their final judgments, should specifically spell out the disposition of these obligations when the net proceeds of a house sale are distributed.
STONE, Judge, dissenting.
The trial judge did not err by enforcing the terms of the agreement as if the parties were unrelated tenants in common. The majority opinion recognizes that co-tenants may agree that one of them will be responsible for payment of expenses during a period of exclusive use. There is nothing in this agreement to suggest that the parties intended that the appellant would be entitled to reimbursement out of the net proceeds of the sale. See Sosnowitz v. Sosnowitz, 342 So.2d 524 (Fla. 3d DCA), cert. denied, 352 So.2d 174 (Fla. 1977). There is no reason to impose upon joint co-owners the extra burden of proving a quid pro quo for specified provisions in a written agreement where no issue is raised *1022 of a lack of consideration for the contract as a whole. At the very least, any increased burden should be placed upon the party claiming the benefit of use at the co-tenant's expense, rather than burdening the non-user who has, in any event, lost the opportunity to receive rent or profit during the period of the other's use.